(114 App. Div. 736)

## MOTT v. CITY OF UTICA.

(Supreme Court, Appellate Division, Fourth Department. July 12, 1906.)

1. MUNICIPAL CORPORATIONS—STREET CLEANING—CONTRACT—CONSTRUCTION.

Where a contract for street cleaning provided that the work should be done according to specifications, declaring that the roadway should be cleaned from curb to curb, and that the work should be performed under the supervision and direction, and subject to the approval, of the city surveyor, the surveyor had authority to extend the work of cleaning beyond what was required by the contract.

2. SAME—EXTRA WORK—AMOUNT—EVIDENCE—SUFFICIENCY.

A contract for street cleaning made a distinction between "street dirt" proper and materials placed in the street by lot owners, and the contractor was required to remove only the "street dirt." It was also provided that, whenever the contractor was in doubt as to whether any material found in the streets constituted "street dirt," he should remove the same if the quantity did not exceed half a cubic yard, and report the fact to the office of the city surveyor. On trial of an action by the contractor to recover extra compensation for removing refuse, which was not properly a part of the "street dirt," plaintiff testified that the extra material consisted largely of leaves, and that he was unable to tell just what portion of the leaves fell on the street, and what portion came from yards adjacent thereto. He further testified that in judging as to what proportion was not "street dirt" he stood on the curb line, and

looked up through the trees, and tried to estimate what portion of the leaves would fall on the street and what portion outside. He admitted, however, that he did not see all of the various piles of leaves which it was contended contained matter other than "street dirt." This was the only testimony as to the quantity of material which had been carried away which was not included in the contract. *Held*, that this evidence was too indefinite to support a judgment for the contractor for the reasonable ,value of his services in removing the material not within the contract.

Appeal from Trial Term, Oneida County.

Action by Daniel L. Mott against the city of Utica. From a judgment for plaintiff on the second cause of action, and for defendant on the first cause of action, both parties appeal. Reversed and remanded on defendant's appeal.

The controversy arose out of a contract entered into by the plaintiff with the defendant for cleaning the paved streets of the city of Utica, for which the defendant contracted to pay the plaintiff according to certain prices per a great square of 10,000 square feet, varying according to the kinds and conditions of pavement. The first cause of action is based upon the claim for profits which the plaintiff claims he would have earned if permitted to clean beyond and outside of curb lines projected across intersecting streets; the defendant contending that only the roadway from curb to curb was comtemplated by the contract. The second cause of action is to recover the reasonable value in removing material from the street other than that covered by the contract. The plaintiff was nonsuited on the first cause of action and recovered on the second.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

William E. Seavey, for plaintiff.
William Townsend, for defendant.

KRUSE, J. This action has been tried three times. Upon the first trial the court submitted the case to the jury upon the first cause of action, and plaintiff had a verdict thereon and nonsuited as to the second cause of action. An appeal was taken to this court, which reversed the judgment, ordering a new trial; holding with the defendant that the work covered by the contract included only the street between curbs, and did not cover the work for which the plaintiff sought to recover profits, but that as to the second cause of action the plaintiff was improperly nonsuited, and that as to some of the material removed from the street it was not included in the contract, and that evidence sought to be given to establish that cause of action had been improperly excluded. Mott v. City of Utica, 96 App. Div. 495, 89 N. Y. Supp. 168.

Upon the second trial a nonsuit was granted as to the first cause of action, and the case submitted to the jury upon the second cause of action, and a verdict was found thereon in favor of the plaintiff. The trial court set aside the verdict, holding that the evidence regarding the quantity of material removed by the defendant not covered by his contract was insufficient to establish any basis for a recovery of more than nominal damages. Thereupon the action was again tried with a like result—a nonsuit upon the first cause of action, and a verdict in favor of the plaintiff upon the second cause of action. A motion was made by defendant upon the minutes to set aside the verdict, but was denied, and from the order denying that motion, and the judgment entered upon that

verdict, the defendant appeals.  The plaintiff does not appeal therefrom, but appeals from the order of nonsuit on the second trial.  No judgment seems to have been entered on the nonsuit on the second trial, although an order was entered to that effect, from which the plaintiff appeals; but the defendant stipulates that the order nonsuiting the plaintiff may be reviewed upon this appeal the same as though granted at the trial term, which resulted in the judgment from which the defendant appeals.

As regards the second cause of action, as has already been stated, this court decided that the evidence offered to prove that claim was improperly excluded.  So far as the work covered by the contract is concerned, it is quite clear that it must be done under the superintendence and direction, and subject to the approval, of the city surveyor.  By chapter 258, p. 771, of the Laws of 1898, the authority for making the contract for cleaning streets is vested in the common council, and the question is now raised, and was on the former appeal, whether the city surveyor had authority to extend the work of cleaning streets beyond what was covered in the contract; and further, it is contended on behalf of the defendant that he did not assume to do so.  Aside from the question of the authority, the evidence relating to the city surveyor so assuming to act is not very satisfactory.  It is true that he insisted that all the refuse should be removed from the streets, but there is no claim that he agreed to pay extra therefor.  We have, however, concluded under all the circumstances to hold that he had the power, as an incident to the subject-matter of the contract, and that the evidence was sufficient, at least, to submit that question to the jury.  We think such is the effect of our former decision.

The more serious question is the one which was raised upon the second trial, namely, the failure of proof as to the quantity of extra material removed, and the amount of work done outside of that covered by the contract.  The second cause of action seems to be based upon section 26 of the specifications forming a part of the contract, which provides as follows:

"Whenever in doubt as to whether any material that may be found on the streets comes under the head of street dirt, the contractor shall remove the same, provided the quantity thereof is less than half a cubic yard, and report the fact to the office of the city surveyor."

The complaint so alleges it, and states that, in addition to the street sweepings and street dirt he was required to remove, other material from the paved streets, brought from houses, lawns, and yards, and deposited in the street, was so commingled with the street dirt, street sweepings, and other material which the plaintiff was required to remove under his contract, that it rendered it impossible to separate the same therefrom.  That he was requested to remove all of the material, and that there was doubt in the mind of the plaintiff as to whether the material referred to found on the street came under the head of street dirt, under section 26 of the specifications, and so he removed the same, and, as he alleges, reported the same to the office of the city surveyor, and that the material so found was less in amount than half of a cubic yard.  This last allegation in reference to the quantity evidently refers to the different piles, the accumulation which was mixed with the street

dirt. There is, however, no allegation in the complaint, nor does the plaintiff now contend, that the material so deposited in the streets not covered by his contract was so deposited and commingled by the defendant or any of its officers or agents, or with its permission or consent. ·The contract evidently intended that any accumulation of this character should be removed by the defendant where the given quantity was not more than half a cubic yard, and that it should be reported to the office of the city surveyor, very likely for the purpose of charging the expense of removing the same to the adjoining owner or other person so depositing it; but we think the evidence fails to show that the plaintiff complied with the contract in this regard. He stated verbally that he was removing all of the accumulation upon the streets, but he does not claim that he identified particular piles, nor reported the quantity in each pile or even in gross. Indeed, he was unable to do so upon the trial, and, even assuming that this extra work was done entirely outside of the contract, by the authority and direction of the proper officer of the city, so as to bind it, and that the provision of this twenty-sixth subdivision in the specifications does not apply to the particular work for which the plaintiff now seeks to recover, still the evidence as to how much of the material removed was covered by the contract, and what part was outside, is so unsatisfactory that we think the verdict cannot be sustained.

The extra material which the defendant claims to have removed consisted largely of leaves, which had fallen from the trees standing along the street and in the adjoining yards. He states that all of the street dirt and leaves that he removed from the paved area of the leaf-bearing districts during the leaf period from the last of September to the end of the season, November 22d, was 9,481 cubic yards, of which 6,160 he estimated would be doubtful, leaving 3,321 yards of what he called street dirt, and later stated that he considered it all doubtful, although it constituted the entire quantity of material removed. He considers the reasonable value 40 cents per cubic yard to remove it, but charged the city on the basis of 30 cents per cubic yard; thus making the amount of his claim $1,848. He frankly says that they were unable to tell whether those piles contained leaves coming from the yards or coming from the pavement. The manner of proving the quantity is well illustrated by the following question and answer:

"Q. Well, give us the number of cubic yards of this doubtful material which you removed from the streets of the city of Utica from the leaf-bearing district during the leaf-bearing period during the term of your contract to dumps or places of deposit? A. Do you mean that I have not been paid for? Q. That you claim compensation for here. Objected to as incompetent, immaterial, and no foundation laid for the answer. He should state facts, and not conclusions. He has not yet stated a single fact from which a conclusion can be drawn that he ever carried away any number of loads that he considered doubtful, and he has sworn twice that he could not do it on other trials."

To which the plaintiff replied 6,160 cubic yards. The manner in which he reached this conclusion he states as follows:

"When I came across a pile of dirt of less than half a cubic yard, and I was in doubt whether it was street dirt or not, and I removed it, I didn't report a particular pile to the city surveyor. I didn't make any reports to him

in writing. I didn't report to him where a particular pile of dirt that I removed was located or situated. I could not tell when I came across a pile of dirt on the street what part was street dirt and what part was not. I said before that to get at the quantity of leaves that didn't fall in the roadway, I stood on the curbstone and looked up through the trees. On the other trial I didn't attempt to give the number of cubic yards of dirt that I removed. I arrived at the percentage or amount of leaves that would fall on the pavement by sighting up through the street to determine how many leaves, in my judgment, would fall between the curbs and how many would fall outside, but not the value nor quantity."

And upon further cross-examination testified as follows:

"Q. When they came to a pile of dirt, who determined whether it was street dirt or not? A. Nobody. Q. Then you never determined in any instance whether it was street dirt or not? A. I couldn't tell. I was only in doubt as to whether it was street dirt or not in the leaf-bearing district, covering some 53 streets. Q. When a team came to a load, and you were not there, who exercised the doubts as to whether it was street dirt or not? A. The teamsters' instructions were to take all the dirt they came to; they took it all. Q. How do you know where the dirt came from that they took? A. I was around the city all the time. I had pretty good eyesight. Q. You didn't see every pile of dirt, did you? A. I didn't have to see the piles to tell about that. I saw the dirt. I saw the leaves all around the city. Q. Were you in doubt as to every load they took away, whether it was street dirt or not? A. Well, I knew that every load that they took away had some of both in. Q. How much of both? A. I don't suppose it was always the same; it varied considerably."

He testified that he estimated that 35 per cent. of the leaves would fall between the curb and the street, and 65 per cent. would fall outside, and that 65 per cent. of 9,481 cubic yards, making 6,160 cubic yards, is the amount claimed for extra compensation. He conceded that he had been paid for all of his work under the contract except the claim which he made under section 26 of the specifications.

It would be unprofitable and it seems unnecessary to call attention further to the evidence given by the plaintiff upon the subject of the amount of extra material removed. What has been referred to is a fair sample of all the testimony upon this subject, and upon which he relies to sustain the verdict awarded by the jury, amounting to the sum of $1,493. This is not a case where one party has sustained damages through the wrongful act of another, or where there is a breach of an executory contract. Even in the latter case, reasonable certainty is required. The rule is correctly stated in the Cyclopedia of Law and Procedure (13 Cyc. p. 214) as follows:

"In actions for damages for breach of a contract, while it is not ordinarily necessary to prove the exact amount of loss to an absolute certainty, yet whenever substantial damages are claimed, their amount is the subject of proof, and must be shown with reasonable certainty; and evidence, to be sufficient to authorize a recovery, must furnish some criterion or data whereby the jury may make rational deductions and calculations to determine the amount without danger of gross injustice, or reliance on their own speculations or conjecture of the probable loss sustained."

The fact that the plaintiff was unable to make out his case by more satisfactory or better evidence does not, of itself, authorize a recovery. It is incumbent upon the plaintiff to prove by evidence, with reasonable certainty, the amount of extra material, sufficient in quantity and kind, to justify the jury in finding the amount of the verdict which

they rendered. As was well said by Mr. Justice Rogers on the motion setting aside the verdict upon the second trial, in referring to the plaintiff:

"He has only himself to blame if he has not done his work in such manner or made such data that its cost, with compensation to himself for time, skill, use of plant, etc., can be ascertained; and the omission to produce such evidence upon a trial can only be excused by showing that it has been lost by accident, death, or other unavoidable cause."

We think what is there said regarding the failure of proof as to the amount of material removed not within the terms of the contract applies with equal force to the case as it is now presented, and that the verdict cannot be sustained upon the evidence contained in the record upon this appeal.

The judgment entered upon the verdict upon the second cause of action must be reversed, and a new trial granted thereon, with costs to abide the event, and the appeal from the order granting the nonsuit dismissed. All concur.

---

(113 App. Div. 705.)

### In re KIRBY'S WILL.

(Supreme Court, Appellate Division, Second Department. June 27, 1906.)

1. WILLS—TESTAMENTARY TRUSTS—PURPOSES OF TRUST—AGREEMENT BETWEEN BENEFICIARY AND TRUSTEE—EFFECT.

2. TRUSTS—INTEREST OF BENEFICIARY—CONVEYANCE—STATUTES.

A bond and mortgage given as recited in the agreement represented the interests of the beneficiary in the trust estate, and an assignment by him of the bond and mortgage did not devest him of his right, under Real Property Law, Laws 1896, p. 572, c. 547, § 83, and Personal Property Law, Laws 1897, p. 508, c. 417, § 3, prohibiting such transfer by assignment.

3. SAME—APPOINTMENT OF TRUSTEE—RIGHT OF BENEFICIARY TO COMPEL APPOINTMENT.

Testatrix devised her estate to her executors and their successors in trust to pay a specified sum annually to a beneficiary for life. The sole heir of the testatrix subject to the trust became trustee, and he devised his estate to his wife, and she and the beneficiary entered into an agreement reciting the acceptance by the beneficiary of a bond of the wife secured by mortgage on a lot devised by the testatrix as security for the payment of the annuity. Held, that the beneficiary had such an interest in the real estate mortgaged as entitled him to apply for the appointment of a trustee thereof.